IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL S. HAFERMANN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CV3257 |
| | ) | |
| v. | ) | |
| | ) | |
| SOCIAL SECURITY | ) | **MEMORANDUM** |
| ADMINISTRATION, Michael J. | ) | **AND ORDER** |
| Astrue, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

    Michael S. Hafermann (Hafermann) appeals from the denial of his application for social security benefits. He makes four arguments, and they are: (1) the administrative law judge (ALJ) failed to analyze the *Polaski* factors; (2) the ALJ's credibility findings are not supported by substantial evidence; (3) the ALJ failed to engage in a "medical equivalency analysis"; and (4) the ALJ should have recused herself.[1]  After carefully considering the briefs and the record, I will deny the appeal.

### *I. BACKGROUND*

    Hafermann contended that he was entitled to disability benefits because he suffered from recurrent cellulitis of the left leg and coronary artery disease. (Tr. 24.) At the hearing, Hafermann amended his onset date to March 1, 2004. (Tr. 982.)

---

[1]At one point, there was a concern that the Appeals Council may have mislaid and thus failed to consider documents submitted to it by Plaintiff's counsel. That is no longer a concern. (*Compare* filing 36 and attachments (affidavit of Howard Kelly, Acting Chief of Court Case Preparation and Review Branch 3 and exhibits) *with* filing 43, at CM/ECF p. 2 (Reply Brief in Support of Plaintiff's Position).)

On the date of the hearing, January 3, 2007, Hafermann was 42, he was single, he had never married, he had no children and he lived with his mother and his teenage niece. (Tr. 990.) Hafermann was well-educated. He had obtained a Bachelor of Arts degree from the University of Nebraska at Lincoln and he had attended law school for one semester. (Tr. 990.)

Hafermann told the ALJ that he was employed, laboring between 18 and 20 hours a week at a telemarketing firm, but he also told the ALJ he was unable to work full-time because of his alleged disabilities. (Tr. 990-992, 1005.) He told the ALJ that he had previously worked up to 30 hours a week doing telemarketing work in 2001, but he could no longer work those hours because of "the same problems." (Tr. 991-992.)

Judge Jan E. Dutton had denied a similar claim of disability asserted by Hafermann in October of 2003 and that decision had later been affirmed by the Appeals Council. (Tr. 983.) After this second application was assigned to Judge Dutton, counsel for Hafermann sent the judge a letter requesting that she recuse herself from hearing Hafermann's new case. The substance of the letter stated:

> Mr. Hafermann would like to request that a different judge be assigned to his case. You had previously denied him at the hearings level and he does not feel comfortable with you presiding over his case again. He does understand that if his case is re-assigned to a different judge that his hearing will have to be postponed and scheduled for a different date and time. Please let me know as soon as possible if you will allow Mr. Hafermann's request. Thank you.

(Filing No. 36-2, at CM/ECF p. 42.)

At the commencement of the hearing, counsel for Hafermann renewed her request, but counsel did not offer any more specifics. (Tr. 985-986.) Judge Dutton denied the recusal motion, stating:

> You sent in a letter which I saw this morning that said he would like a different judge. Basically, there is sort of a policy against judge shopping where a claimant is not – can't request a different judge for each, each application. I could recuse myself if I found any basis for that. I don't find any basis. Our office has a routine policy of reassigning the case to the judge who previously heard it, because it is presumed that that judge would be familiar with it, and in this case it's sort of an ongoing continuation of the same impairment reapplied within a year after the last denial, so that would be standard policy for us to have the same judge hear it, and I, I am not authorized to assign a different judge at the claimant's request. So we're going to go ahead today, and I'll decide the case. That's the ruling on that.

(Tr. 986.)

After ruling on the motion, Judge Dutton patiently and courteously considered the statements of Hafermann's counsel, the testimony of the claimant, the documentary evidence and the opinions of a vocational expert. (Tr. 980-1016.) The matter was submitted, and on February 14, 2007, Judge Dutton issued her opinion denying Hafermann's application. (Tr. 24-33.)

The ALJ first determined that the claimant's past relevant work was that of a telemarketer, industrial truck operator, material handler, welder and bus driver, but she also determined that he had not performed substantial and gainful work activity, within the meaning of the regulations, since January 1, 2002. (Tr. 25.) Judge Dutton then carefully set out Hafermann's medical history. (Tr. 25-28.) In particular, she detailed Hafermann's treatment for cellulitis of the left leg following a laceration of the left shin in July of 1996. She also described his treatment for chest pain and associated coronary artery disease which included angioplasty and the placement of a stent in 2004.

In sum, the judge concluded that Hafermann suffered from impairments, which were more than "slight" and therefore considered "severe" within the meaning of the

regulations. Specifically, the ALJ found that Hafermann suffered from chronic and recurrent cellulitis[2] of the left leg resulting in mild leukocytosis,[3] arteriosclerotic heart disease requiring angioplasty with stent placement of the circumflex artery, hypertension and hyperlipidemia. (Tr. 28.)

Judge Dutton then found, at step three, that Hafermann's impairments did not meet the "listings." (Tr. 28.) The judge recognized that not only was she required to determine whether the impairments suffered by Hafermann were the "same" as those recited in the "listings," but she recognized that she was also required to determine whether they were "equivalent." (*Id.*) In addition, and in support of her conclusion, Judge Dutton noted that Hafermann had "not contended that his medically determinable impairments meet the 'listings' . . . ." (*Id.*)

At step four, the judge determined whether the claimant possessed the residual functional capacity to perform his past relevant work given his impairments. In order to do that, the ALJ recognized that she was first required to analyze the claimant's subject complaints to determine the impact of those things on the claimant's ability

---

[2]"Cellulitis" is "a common infection of the lower layers of skin (dermis) and the subcutaneous tissues (areas underneath the skin) caused by a bacterial infection. While cellulitis sometimes develops around wounds in the skin or surgical incisions, in other cases it arises without an obvious source for the bacterial infection. Staphylococci are the bacteria that most commonly cause cellulitis, followed by Streptococci. Less commonly, other types of bacteria may cause cellulitis." Melissa Conrad Stöppler, MD, *Cellulitis,* available at http://www.medicinenet.com (last accessed September 20, 2008). "Cellulitis usually begins as a small area of pain and redness on the skin. This area spreads to surrounding tissues, resulting in the typical signs of inflammation – redness, swelling, warmth, and pain. A person with cellulitis can also develop fever and/or swollen lymph nodes in the area of the infection." *Id.*

[3]"Leukocytosis" is an "[i]ncrease in the number of white blood cells." *Definition of Leukocytosis,* available at http://www.medterms.com (last accessed September 20, 2008).

to work. "Inherent in such analysis, of course, is an assessment of the Claimant's credibility." (Tr. 28.) Citing 20 C.F.R. 404.1529, 20 C.F.R. 416.929, *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) and Social Security Ruling 96-7p, Dutton carefully analyzed Hafermann's claim that he could not do full-time sedentary work such as telemarketing. (Tr. 29-31.)

>Judge Dutton discounted Hafermann's claim.   She stated:
>
>In view of the fact that none of his treating physician's [sic] have opined that the Claimant is disabled in spite of his apparent attempts to obtain such opinions, the fact that he has been able to return to work as a telemarketer on a part-time basis during the last two years with what appear to be only self-imposed restrictions with respect to the number of hours he works (see Exhibit 22F/21 where Mr. Hartmann [sic] informed his doctor that "he knows what his limitations are and he's not willing to try anything above what he believes them to be"), the fact that the Claimant was able to mow his lawn in August 2006 (see Exhibit 22F/13), the fact that two of his physicians have tried to get him to increase his exercise and physical activity, and the fact that the Claimant continues to smoke cigarettes even though his treating doctors have told him that smoking will worsen his condition, the undersigned Administrative Law Judge finds that the Claimant's testimony, insofar as it pertained to the inability to perform virtually any type of work activity on a sustained basis, was not credible.

(Tr. 30.)

Having come to this conclusion, the judge then proceeded to determine Hafermann's residual functional capacity. She found the following:

>Accordingly, based upon the "objective medical evidence" of record, it is reasonable to conclude that, in spite of his medically determinable impairments, the Claimant can occasionally lift/carry items weighing 20 pounds; frequently lift/carry items weighing up to 10 pounds; sit for 6

>hours during the course of an 8-hour workday; stand/walk for up to 2 hours during the course of an 8-hour workday; and occasionally perform postural activities including climbing, balancing, stooping, crouching and crawling. However, he cannot work at heights, must avoid hazardous work environments, and cannot be exposed to temperature extremes or to environmental irritants including dust, gases, fumes and odors.

(Tr. 30-31.)

Judge Dutton then consulted a vocational expert. Given the judge's residual functional capacity determination, the vocational expert concluded that Hafermann could return to his past relevant work as a telemarketer. (Tr. 31, 1009-1013.) The expert also determined that the claimant could perform other sedentary jobs that were available nationally and in Nebraska including production assembler, account clerk and interviewer. (Id.) The vocational expert also stated that if Hafermann's subject complaints were believed he could still work as a telemarketer, but not as that job is typically performed. (Tr. 1013.)

Because Hafermann could return to his past relevant work as a telemarketer, and because he could perform other sedentary jobs, Judge Dutton found that Hafermann was not disabled within the meaning of the law. (Tr. 31.) Accordingly, she denied his application. (Tr. 33.) Hafermann sought review by the Appeals Council and the Appeals Council denied relief on September 11, 2007. (Tr. 13-15.) This action was commenced on November 7, 2007. (Filing 1.)

## *II. ANALYSIS*

The law that is generally applicable to the review of social security cases is well-understood and, as a result, I will not rehash it. Rather, I turn directly to Plaintiff's arguments.

### *A. Polaski and Credibility*

Plaintiff asserts two related arguments which should be evaluated together. Initially, he claims that the ALJ failed to analyze the *Polaski* factors. Then he asserts that the ALJ's credibility findings are not supported by substantial evidence. For the following reasons, I am not persuaded by these arguments.

First, the ALJ was not required to slavishly recount and laboriously discuss the *Polaski* factors. On the contrary, while the ALJ must evidence an understanding of them, "the ALJ's decision need not include a discussion of how every *Polaski* factor relates to the claimant's credibility." *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007) (affirming denial of an application of a 40-year-old claimant with a high school education plus additional secretarial training where ALJ discounted claim of disabling pain and concluded that the claimant could return to her past relevant work as an employment clerk, administrative assistant or program manager despite the fact that the claimant suffered from "fibromyalgia, status post left knee surgery, back pain secondary to past compression fracture and depression.") (citing *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004)). Thus, I reject the first argument asserted by Hafermann because it is obvious that the ALJ fully understood her responsibilities under *Polaski*.

Second, I conclude that the ALJ's credibility analysis was fully supported by substantial evidence. Several examples are sufficient to illustrate the validity of this conclusion.

\*       On one occasion in November of 2001, Dr. Einspar wrote that "Michael is convinced that he is not going to be able to work due to the recurring nature of his problem though I don't really see anything on examination that would preclude employment." (Tr. 212.)

\*      On another occasion in June of 2002, Hafermann, hoping to receive public assistance, sought a medical opinion that he could not work. Dr. Einspar made a note to the file stating that "I don't think his diagnosis qualifies him." (Tr. 1062.[4])

\*      In August of 2005, another doctor noted that the plaintiff had suffered no problems with his cellulitis for 9 months, but when the doctor advised him to begin to diet, exercise and quit smoking, Hafermann, who exhibited "anger," responded that "he's tried doing some physical things in the past and *he knows what his limitations are and he is not willing to try anything above what he believes them to be*." (Tr. 504.) (Emphasis added.) Indeed, Hafermann told the doctor "he was very upset with the medical establishment and is concerned that he had not been listened to . . . ." (*Id.*) The doctor observed that the claimant "kept wanting to dwell on the problems that have happened in the past rather than moving forward." (*Id.*)

\*      In 2007, when the ALJ asked the plaintiff's counsel and the plaintiff himself whether there were any opinions from doctors about disability or work restrictions, they either did not respond to the judge's question (Tr. 982) (Plaintiff's counsel) or gave a negative response. (Tr. 1008-1009 (Claimant).)  Indeed, the plaintiff told the ALJ that "I've never really discussed [work restrictions] with anybody especially the Health Department." (Tr. 1008.)

---

[4]This was one of the records that the claimant's lawyer submitted to the Appeals Council. " (*Compare* Tr. 1054 with Tr. 1062.) She claimed that this record and others were "significant" and "new and material." (Tr. 1054.) Fairly understood, the complete record shows that Hafermann repeatedly sought a note from a reluctant doctor to get financial assistance and, despite the doctor's written reservations (Tr. 1062), the physician wrote a purposely ambiguous letter addressed "to whom it may concern." (Tr. 207.) The doctor stated that because of cellulitus the plaintiff had "difficulties remaining in the work force" and "has been unable to remain employed." (*Id.*) In short, this "significant," "new" and "material" evidence serves to buttress the ALJ's analysis rather than detract from it.

In summary, because it is both succinct and apt, it is appropriate to repeat what the Eighth Circuit has said in a roughly comparable case:

> The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about her limitations. *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id.* at 714; *see also Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992) ("We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain."). Here, the ALJ pointed to substantial evidence in the record supporting her decision to discount Casey's subjective allegations. We therefore defer to the ALJ's credibility finding.

*Casey,* 503 F.3d at 696.

### B. *"Listing" Equivalency*

Although neither Hafermann nor his counsel ever suggested that the claimant met the "listings" when they appeared before the ALJ, on appeal, Hafermann faults the ALJ for failing to determine whether the claimant's cellulitis was equivalent to a "listing level" impairment. I reject this claim because it was the plaintiff's burden to show that his impairment was equivalent to the "listings" and the plaintiff has failed to point out any medical findings in the record that satisfies that burden. *See*, *e.g.*, *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (holding that substantial evidence established that the claimant failed to demonstrate that he met the requirements of being mentally retarded; stating that "the burden of proof is on the [claimant of social security disability benefits] to establish that his or her impairment meets or equals a listing"; further stating that "[t]o meet a listing, an impairment must meet all of the listing's specified criteria" and "'[m]edical equivalence must be based on medical findings.'") (citations omitted).

-9-

### C. *Failure to Recuse*

Finally, I reject Plaintiff's claim that Judge Dutton should have recused herself simply because she had ruled against the claimant in an earlier application. Hafermann has failed to cite any authority for that proposition, and I can find none. Furthermore, a review of the record establishes that Judge Dutton conducted herself fairly and impartially. Simply put, "ALJ [Dutton's] prior adjudication of Plaintiff's disability application did not disqualify [her] from rendering a decision in the present matter." *Cummins v. Barnhart*, 460 F. Supp.2d 1112, 1123 (D. Ariz. 2006) (granting summary judgment for the government) (citing *Alfano v. Bowen*, 1988 WL 23542 (E.D. N.Y. 1988), *aff'd*, 2008 WL 224856 (9th Cir. 2008).

IT IS THEREFORE ORDERED that the plaintiff's appeal is denied. A separate judgment will be issued.

September 22, 2008.     BY THE COURT:

                                              *s/Richard G. Kopf*
                                              United States District Judge